## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| HUNTER L. DUNN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| CLUBCORP GOLF OF TEXAS, LP, D/B/A | § | With Jury Demand Endorsed |
| STONEBRIDGE RANCH COUNTRY CLUB | § | |
| and SOUTHWEST RECOVERY SERVICES, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Hunter L. Dunn ("Plaintiff"), by and through counsel, for his Complaint against Defendants, ClubCorp Golf of Texas, LP, d/b/a Stonebridge Ranch Country Club ('Stonebridge") and Southwest Recovery Services ("SWRS"), (Stonebridge and SWRS are collectively referred to as "Defendants"), and states as follows:

### I. INTRODUCTION

1.      Defendants, a creditor and debt collector, engaged in willful, malicious, deceptive and harassing actions against Plaintiff in furtherance of their efforts to illegally collect an unsecured debt from him, during the pendency of Plaintiff's chapter 7 bankruptcy case, when they were aware of the effective bankruptcy automatic stay legally prohibiting all contacts with Plaintiff seeking collections of the debt. Defendants' actions at issue include: 1) sending Plaintiff numerous demand letters, text messages, invoices and correspondences demanding his payment; and 2) making many collection calls to Plaintiff on his cellular phone.

2.     Plaintiff claims Defendants violated: 1) Tex. Fin. Code § 392.001 *et seq.,* known as the Texas Debt Collection Act ("TDCA"); 2) the common law prohibiting invasion of privacy; and 3) the automatic stay of the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Plaintiff seeks to recover from Defendants, joint and severally, actual, statutory, and punitive damages, and legal fees and expenses.

## II. PARTIES

3.     Plaintiff is a natural person residing in Collin County, Texas and a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and the TDCA, Tex. Fin. Code § 392.001(1).

4.     Defendant Stonebridge is a domestic corporation that may be served by delivering a summons to its registered agent, Corporation Service Company, 211 E. 7th Street, Austin, TX 78701-3218

5.     Defendant SWRS is a domestic corporation that may be served by delivering a summons to its registered agent, Steven Dietz, 17311 Dallas Parkway Suite 235, Dallas, TX 75248

6.     Defendants are "persons," as defined by the FCRA, 15 U.S.C. § 1681a(b), and are "creditors," "debt collectors," and/or "third-party debt collectors" under the TDCA, Tex. Fin. Code §§ 392.001(3)(6) and (7).

7.     The debt Defendants were attempting to collect from Plaintiff was a "consumer debt," as defined by Tex. Fin. Code § 392.001(2).

8.     Defendants are furnisher of consumer credit information to Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively the "Credit Reporting Agencies" or "CRA's").

## III. JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334 and 1367 and 15 U.S.C. § 1681p.

10.     Venue is proper this district, because Defendants transact business in this district, Plaintiff filed his bankruptcy case in this district, and the conduct complained of occurred in this district.

### IV. FACTUAL ALLEGATIONS

**A.      The Subject Pre-Petition Debt and Account were Listed and Included in Plaintiff's Bankruptcy Case, Legally Prohibiting Defendants from Contacting Plaintiff After He Filed his Bankruptcy Case to Collect on the Debt from Him.**

11.     The debt and Account were listed in Plaintiff's Bankruptcy Case and as pre-petition debt, Defendants were legally prohibited to take any actions to contact Plaintiff seeking collection of the debt from him during the pendency of the case as a result of the applicable automatic stay, which immediately went into effect when Plaintiff filed his Bankruptcy Case and remains in effect while Plaintiff's Bankruptcy Case is pending.

**1)      Plaintiff Listed the Subject Debt and Account in his Bankruptcy Case and Identified Stonebridge as the Creditor.**

12.      On February 5, 2019, Plaintiff filed a bankruptcy case under Chapter 7, liquidation, of the U.S. Bankruptcy Code in case number 19-40351 ("Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Texas ("Bankruptcy Court").

13.     Along with his bankruptcy petition, Plaintiff filed schedules listing his pre-petition debt, which included, in part, his unsecured debt in "**Schedule E/F: Creditors Who Have Unsecured Claim**s" ("Schedule E/F"), where he listed as one of his unsecured claims, a claim on debt for goods and/or services for the subject account, an account with the last 4 digits 8153 ("the Account"), and he identified Stonebridge as the creditor for the Account.

-3-

14.     On May 9, 2019, Plaintiff filed an amended Schedule E/F," again listing a claim for the Account and identifying Stonebridge as the creditor.

15.     A copy of excerpts from Plaintiff's Schedule "E/F" and amended Schedule E/F listing the Account are attached hereto as Exhibits "A" and "B," respectively.

**2)     Defendant Stonebridge Received Notice from the Bankruptcy Court About Plaintiff's Bankruptcy Case and the Resulting Automatic Stay, as well as an Order that All Creditors were Prohibited from Contacting Plaintiff for Collections During his Bankruptcy Case.**

16.     On February 8, 2019, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Chapter 7 Bankruptcy Case " ("341 Notice") to Stonebridge by first class mail. The 341 Notice, Official Form 309A, warned all creditors in conspicuous language:

> [t]he filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property."…. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

17.     A true and correct copy of the 341 Notice is attached hereto as Exhibit "C."

18.     The United States Postal Service did not return the 341 Notice sent to Stonebridge, creating a presumption it was received.

**B.     Despite Stonebridge Receiving Notice of the Automatic Stay and an Explanation of the Stay from the Bankruptcy Court, Specifically Warning that Creditors May Not Take Actions to Collect Debts from Debtors, Including Demanding Repayment from Debtors by Mail, Phone or Otherwise, Defendants Took Prohibited Collection Actions on the Account Against Plaintiff, by Contacting him by Mail and Phone, Demanding Payment on the Account During his Bankruptcy Case.**

19.     After Plaintiff filed his Bankruptcy Case and while the case was pending, Defendants attempted to collect from Plaintiff personally on the Account by repeatedly contacting him demanding his payment on the Account. Specifically, Defendants made continuous harassing

and deceptive demands for payment on the Account from Plaintiff by contacting him through: 1) numerous correspondences, written and electronic; and 2) collection calls Defendants made to Plaintiff on his cellular phone.

        **a)**      **During Plaintiff's Bankruptcy Case, Stonebridge Sent Plaintiff at Least 12 Correspondences and Invoices on the Account Demanding His Payment.**

20.     On or about February 28, 2019, Stonebridge sent Plaintiff an invoice on the Account and "**ACCOUNT SUMMARY**," along with a self-addressed, detachable payment coupon stating, in part, "**BALANCE DUE** 1,545.00," "**PAYMENT DUE UPON RECEIPT**," and instructions to "PLEASE DETACH AND RETURN WITH YOUR PAYMENT." The "**INVOICE SUMMARY**" also shows there was a "Late Fee 45.00" assessed to the Account on 02/28/2019, and notes, "[a] portion of your current bill is past due" and "[p]lease submit your payment immediately to avoid further action on your account."   The invoice also warns, "Members' accounts unpaid thirty (30) days after the billing date are considered delinquent and a late charge equal to 3% of the past due amount shall be added to the members' next statement."

21.     A redacted copy of the invoice dated 2/28/19 Stonebridge sent to Plaintiff is attached hereto as Exhibit "D."

22.     On or about March 31, 2019, Stonebridge sent Plaintiff an invoice on the Account and "**ACCOUNT SUMMARY**," along with a self-addressed, detachable payment coupon stating, in part, "**BALANCE DUE** 1,590.00," "**PAYMENT DUE UPON RECEIPT**," and instructions to "PLEASE DETACH AND RETURN WITH YOUR PAYMENT." The "**INVOICE SUMMARY**" also shows there was a "Late Fee 45.00" assessed to the Account on 04/30/2019, and notes, "[a] portion of your current bill is past due" and "[p]lease submit your payment

-5-

immediately to avoid further action on your account."  The invoice also warns, "Members' accounts unpaid thirty (30) days after the billing date are considered delinquent and a late charge equal to 3% of the past due amount shall be added to the members' next statement."

23.    A redacted copy of the invoice dated 3/31/19 Stonebridge sent to Plaintiff is attached hereto as Exhibit "E."

24.    On or about April 30, 2019, Stonebridge sent Plaintiff an invoice on the Account and "**ACCOUNT SUMMARY,**" complete with a self-addressed, detachable payment coupon, stating, in part, "**BALANCE DUE** 1,635.00," "**PAYMENT DUE UPON RECEIPT**," and instructions to "PLEASE DETACH AND RETURN WITH YOUR PAYMENT." The "**INVOICE SUMMARY**" also shows there was a "Late Fee 45.00" assessed to the Account on 04/30/2019, and notes, "[a] portion of your current bill is past due" and "[p]lease submit your payment immediately to avoid further action on your account."  The invoice also warns, "Members' accounts unpaid thirty (30) days after the billing date are considered delinquent and a late charge equal to 3% of the past due amount shall be added to the members' next statement."

25.    A redacted copy of the invoice dated 4/30/19 Stonebridge sent to Plaintiff is attached hereto as Exhibit "F."

26.    On or about May 31, 2018, Stonebridge sent Plaintiff an invoice on the Account and "**ACCOUNT SUMMARY,**" complete with a self-addressed, detachable payment coupon, stating, in part, "**BALANCE DUE** 1,635.00," "**PAYMENT DUE UPON RECEIPT**," and instructions to "PLEASE DETACH AND RETURN WITH YOUR PAYMENT." The "**INVOICE SUMMARY**" also states, "[a] portion of your current bill is past due" and "[p]lease submit your payment immediately to avoid further action on your account."

-6-

27.     A redacted copy of the invoice dated 5/31/19 Stonebridge sent to Plaintiff is attached hereto as Exhibit "G."

28.     On or about June 3, 2019, a representative from Stonebridge, identified as the Office Manager Alice Mecoy, sent Plaintiff an e-mail on the Account, with the "**Subject:** Past Due Account D8153," informing Plaintiff, "I am contacting you in an attempt to collect the final $1,500.00 balance due on your Membership Initiation Fee," noting "[t]he Initiation Fee billed on December 3,1 2018 and is now 5 months past due and has accrued late fees." It also states, "[i]f we receive payment of the $1,500.00 by June 17, we will forgive the accrued late fees and mark your account paid in full," and "[i]f we do not receive your payment by June 17, 2019, your account will be turned over to our collection agency." Also, Stonebridge's representative writes in the e-mail that she has attached copies of Plaintiff's signed Promissory Note, Federal Truth-in-lending disclosure, and statements showing the charges due."

29.     A redacted copy of the e-mail dated 6/3/19 Stonebridge sent to Plaintiff is attached hereto as Exhibit "H."

30.     On or about June 30, 2019, Stonebridge sent Plaintiff a demand letter on the Account, informing him, "[y]our membership account balance is now more than 90 days past due," and warning Plaintiff, "[i]f your account is not brought current immediately, your membership at the Club may be terminated without further notice," and that "[f]urther efforts at collection may also be pursued." Included with the letter was a Stonebridge self-addressed, detachable payment coupon showing, in part, "BALANCE DUE 1,680.00," "**PAYMENT DUE UPON RECEIPT**," and instructions to "PLEASE DETACH AND RETURN WITH YOUR PAYMENT," as well as an Account invoice, stating "**BALANCE DUE** $1,680.00," which included, in part, as noted in

the invoice summary, a "Late Fee 45.00" assessed on 06/30/2019. The invoice summary also states, "[a] portion of your current bill is past due" and "[p]lease submit your payment immediately to avoid further action on your account."  The invoice also warns, "Members' accounts unpaid thirty (30) days after the billing date are considered delinquent and a late charge equal to 3% of the past due amount shall be added to the members' next statement."

31.     A redacted copy of the demand letter dated 6/30/19 Stonebridge sent to Plaintiff is attached hereto as Exhibit "I."

32.     On or about July 9, 2019, July 18, 2019,  and July 25, 2019,  a representative of Stonebridge, Christopher Wilson, sent Plaintiff a past-due letter by e-mail, demanding Plaintiff call him at the phone number provided at his earliest convenience, informing him, "[i]t is important that I speak to you today," and stating there was "a balance due" on the Account.

33.     Redacted copies of the past-due letters dated 7/9/19, 7/18/19 and 7/25/19 Stonebridge sent to Plaintiff are attached hereto as Exhibits "J," "K," and "L," respectively.

34.     On July 31, 2019, Stonebridge sent Plaintiff a demand letter on the Account, informing him, "[y]our membership account balance is now more than 90 days past due," and warning Plaintiff, "[i]f your account is not brought current immediately, your membership at the Club may be terminated without further notice," and that "[f]urther efforts at collection may also be pursued." Included with the letter was a Stonebridge self-addressed, detachable payment coupon showing, in part, "BALANCE DUE 1,725.00," "**PAYMENT DUE UPON RECEIPT**," and instructions to "PLEASE DETACH AND RETURN WITH YOUR PAYMENT," as well as an Account invoice, stating "**BALANCE DUE** $1,725.00," which included, in part, as noted in the invoice summary, a "Late Fee 45.00" assessed on 07/31/2019. The invoice summary also

states, "[a] portion of your current bill is past due" and "[p]lease submit your payment immediately to avoid further action on your account."  The invoice also warns, "Members' accounts unpaid thirty (30) days after the billing date are considered delinquent and a late charge equal to 3% of the past due amount shall be added to the members' next statement."

35.     A redacted copy of the demand letter dated 7/31/19 Stonebridge sent to Plaintiff is attached hereto as Exhibit "M."

36.     On August 28, 2019, Stonebridge's representative Christopher Wilson sent Plaintiff another past-due letter, identical in form as the letter he sent Plaintiff on July 9, 2019, July 18, 2019,  and July 25, 2019, wherein he requests Plaintiff contact him at his earliest convenience regarding a balance due on the Account.

37.     A redacted copy of the past-due letter dated 8/28/19 Stonebridge sent to Plaintiff is attached hereto as Exhibit "N."

38.     On August 31, 2019, Stonebridge sent Plaintiff a demand letter on the Account, informing him, "[y]our membership account balance is now more than 90 days past due," and warning Plaintiff, "[i]f your account is not brought current immediately, your membership at the Club may be terminated without further notice," and that "[f]urther efforts at collection may also be pursued." Included with the letter was a Stonebridge self-addressed, detachable payment coupon showing, in part, "BALANCE DUE 1,538.25," "**PAYMENT DUE UPON RECEIPT**," and instructions to "PLEASE DETACH AND RETURN WITH YOUR PAYMENT," as well as an Account invoice, stating "**BALANCE DUE** $1,538.25," which included, in part, as noted in the invoice summary, a "Late Fee 38.25" assessed on 08/31/2019. The invoice summary also states, "[a] portion of your current bill is past due" and "[p]lease submit your payment immediately

to avoid further action on your account."  The invoice also warns, "Members' accounts unpaid thirty (30) days after the billing date are considered delinquent and a late charge equal to 3% of the past due amount shall be added to the members' next statement."

39.     A redacted copy of the past-due letter dated 8/31/19 Stonebridge sent to Plaintiff is attached hereto as Exhibit "O."

> **b)      During Plaintiff's Bankruptcy Case, Stonebridge Called Plaintiff on his Cellular Phone, Seeking Collection on the Account.**

40.     Stonebridge made prohibited collection calls to Plaintiff on the Account during his Bankruptcy Case. For example, on July 11, 2019 at 9:38 a.m., Stonebridge called Plaintiff on his cellular phone attempting to collect on the Account from him, even though the automatic stay is in effect.

> **c)      During Plaintiff's Bankruptcy Case, Stonebridge Retained SWRS to Collect on the Account from Plaintiff.**

41.     On or about September 9, 2019, Stonebridge retained SWRS, a debt collector, to collect on the Account from Plaintiff.

> **d)      During Plaintiff's Bankruptcy Case, SWRS, Individually and as Stonebridge's Agent, Sent Plaintiff Written Correspondence(s) Demanding Payment on the Account.**

42.     On or about September 9, 2019, for example, SWRS' Collection Manager, Steven Dietz, sent Plaintiff a demand and debt validation letter on the Account, regarding Club Corp, informing him there was a "Balance: $1,538.25" on the overdue Account and threatened that if he did not remit the balance due, or make satisfactory arrangements, SWRS would advise its client that additional action may be necessary." The letter also includes a self-addressed, detachable payment coupon, instructing Plaintiff to, "PLEASE DETACH AND RETURN WITH

PAYMENT," and informs Plaintiff that SWRS had been retained by Club Corp to collect on an overdue account." It includes payment information and a Mini-Miranda disclosure that "[t]his letter serves as an attempt to collect a debt, and any information obtained will be sued for that purpose" noting "[t]his communication is from a debt collector."

43.     A redacted copy of the demand and debt validation letter dated 9/9/19 SWRS sent to Plaintiff is attached hereto as Exhibit "P."

> **e)     During Plaintiff's Bankruptcy Case, SWRS Sent Plaintiff Text Messages to his Cellular Phone, Demanding Payment on the Account.**

44.     On September 10, 2019 at 2:06 p.m., for example, SWRS sent Plaintiff a text message stating:

> Date of Delinquency: 12/30/18 Balance: $1,538.25. This notification is to advise you that records still show you have an outstanding balance for membership. Hopefully this oversite can be addressed prior to credit reporting. Please contact my office today to discuss your options (866) 558-3328 ext. 315. Follow up with me today or make payment online at http://www.swrecovery.com. Thank you.

> **f)     During Plaintiff's Bankruptcy Case, SWRS Made at Least 5 Collection Calls to Plaintiff, Demanding Payment on the Account.**

45.     On September 10, 2019, September 13, 2019, September 17, 2019, September 19, 2019, and September 24, 2019, SWRS's representative agent, identifying himself as Andre, called Plaintiff on his cellular phone, in furtherance of Defendant(s) attempts to collect on the Account, even though the automatic stay was in effect. For each of these calls, Andre left a voice mail message, demanding Plaintiff return his phone call at the telephone number (817) 945-8329.

**C.     There Were No Exceptions to Have Legally Permitted Defendants to Have Taken Their Collection Actions on the Account During Plaintiff's Bankruptcy Case.**

46.     At no time during the pendency of Plaintiff's Bankruptcy Case did Defendant or any other person or entity object to or dispute the details or completeness of the claim regarding the Account listed on "Schedule E/F" to Plaintiff's bankruptcy petition.

47.     At no time did Plaintiff reaffirm the debt on the Account with any person or entity.

48.     At no time did the Bankruptcy Court left the automatic stay as to the Account and subject debt.

49.     Defendants have no legally justifiable reason or basis as to why they engaged in their subject harassment and collection actions against Plaintiff.

## V.
### GROUNDS FOR RELIEF - COUNT I

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

50.     Plaintiff repeats, re-alleges, and incorporates by reference Paragraphs Nos. 10 through 49 above, as if fully rewritten here.

51.     Defendants have violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

a)      Tex. Fin. Code § 392.301(a)(8), which prohibits Defendants from threatening to take an action prohibited by law; inasmuch as: 1) the bankruptcy automatic stay prohibits Defendants from attempting to collect pre-petition debts included in bankruptcy from debtors while their respective bankruptcy cases are pending; and 2) the common law protects Plaintiff's privacy rights, to include being contacted by Defendants seeking collections after filing his Bankruptcy Case, Defendants threats of further collections on the Account from Plaintiff in their written and telephonic communications and contacts they made with Plaintiff at issue were threats to take further actions prohibited by law;

b)      Tex. Fin. Code § 392.302(4), which prohibits Defendants from causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number, Defendants' representatives

repeatedly calls to Plaintiff to harass him and coerce his payment on the Account were violations of this section of the TDCA;

c)    Tex. Fin. Code § 392.303(2), which prohibits Defendants from collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer, Defendants representations to Plaintiff that he was responsible to pay late fees or any charges to the Account which accrued after he filed his Bankruptcy Case, when the Account was uncollectible, were violations of the TDCA;

d)    Tex. Fin. Code § 392.304(a)(8), which prohibits misrepresenting the character, extent, or amount of Plaintiff's debt, Defendants representations to Plaintiff during his Bankruptcy Case, as stated in their post-bankruptcy communications to or contacts with Plaintiff at issue representing the Account was past-due, owing and collectible, and that the outstanding amount owed included post-bankruptcy accrued late fees and charges, were misrepresentations made to Plaintiff of the character, extent or amount of the debt and actionable under the TDCA;

e)    Tex. Fin. Code § 392.304(12), which prohibits representing that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges, since the automatic stay prohibited all collections on the Account from Plaintiff while his bankruptcy case was pending, Defendants violated this section of the TDCA when they represented to Plaintiff during the time at issue that post-bankruptcy filing late fees and/or other charges were accruing on the Account, for which Plaintiff was responsible to pay during his Bankruptcy Case, were violations of the TDCA; and

f)    Tex. Fin. Code § 392.304(a)(19), which prohibits Defendants' use of false representations or deceptive means to collect a debt, for the reasons stated in the preceding paragraphs (a through e), Defendants intentionally tried to coerce or deceive Plaintiff into paying the debt through false representations, while Defendants knew they were forbidden to take any collection actions on the Account while the automatic stay was in effect..

52.     Under Tex. Fin. Code Ann. § 392.403, Defendants' actions make them liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees. Also, Plaintiff's injuries resulted from Defendants' malice, actual fraud and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

53.     Because of Defendants' conduct, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include his reasonable attorney's fees incurred in prosecuting this claim.

## VI.  GROUNDS FOR RELIEF - COUNT II

### INVASION OF PRIVACY

54.     Plaintiff repeats, re-alleges, and incorporates by reference Paragraphs Nos. 10 through 49 above, as if rewritten here in their entirety.

55.     At all pertinent times, Plaintiff had a reasonable and lawful expectation not to be contacted and harassed by Defendants seeking collections on the Account while his Banrkuptcy Case was pending. Thus, Defendants' contacts they initiated and made with Plaintiff during the pendency of his Bankruptcy Case, seeking collections on the Account through written letters, e-mails, text messages and collection calls, were invasions of Plaintiff's privacy rights. These wrongful acts of Defendants caused injury to Plaintiff.

56.     Defendants' wrongful acts were invasions of Plaintiff's privacy rights and caused injury to Plaintiff, which resulted in extreme emotional anguish, loss of time and inconvenience. Plaintiff's injuries resulted from Defendants' malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VII. GROUNDS FOR RELIEF- COUNT III

## VIOLATION OF THE AUTOMATIC STAY

57.     Plaintiff repeats, re-alleges, and incorporates by reference Paragraphs Nos. 10 through 49 above, as if set forth herein in their entirety.

58.     At all material times, Defendants had actual knowledge of Plaintiff's Bankruptcy Case and the automatic stay, which went into effect immediately once Plaintiff filed his Bankruptcy Case, as well as knowledge that they were legally prohibited from taking collection actions to collect on the Account from Plaintiff. Defendants were even specifically warned by the Bankruptcy Court in the 341 Notice, "Creditors cannot demand repayment from debtors by mail, phone, or otherwise."

59.     Despite their knowledge of the automatic stay in effect as to the Account, Defendants took prohibited collection actions and attempted to collect from Plaintiff personally on the Account during the pendency of his Bankruptcy Case, as evidenced by the demand letters, invoices, text messages, e-mails and telephone calls Defendants made to Plaintiff during his Bankruptcy Case, demanding his payment on the Account.

60.     Defendants' actions were willful acts in furtherance of its efforts to collect the debt from Plaintiff, in violation of the automatic stay of 11 U.S.C. § 362 and were harassing attempts to coerce and deceive Plaintiff to pay the debt. Defendants' failure to comply with the aforesaid law and automatic stay, despite being on notice of Plaintiff's Bankruptcy Case and receiving information about the automatic stay and being prohibited from taking collection activities on the Account while the automatic stay was in effect, illustrates Defendants' utter contempt for federal law.

61.     Defendants knowingly and willfully violated the orders of the Bankruptcy Court and federal law as imposed by the U.S. Bankruptcy Code. After this prima facie showing by Plaintiff, the duty falls on Defendants to show, as their only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability. Failing a showing by Defendants of their present inability to comply with the orders of the Bankruptcy Court, Plaintiff must prevail on his claims, and Defendants must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court. Any defense put forth by Defendants in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendants. Any allegation of a good faith exception should not be allowed.

62.     Specifically, Defendants violated the automatic stay, an automatic injunction that halts actions by creditors to collect debts that arose before the filing of the respective bankruptcy Case from a debtor who has filed for bankruptcy, pursuant to 11 U.S.C. § 362.

63.     There are no exceptions under 11 U.S.C. § 362, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendants' conduct, which was in blatant disregard and violation of the automatic stay.

64.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here. No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

65.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to Defendants' violations of the orders and injunctions of the Bankruptcy Court. Any burdening

of Plaintiff with an obligation to police the misconduct of Defendants would be a complete derogation of the law. It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance. Any attempt by Defendants to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any such defense put forth by Defendants in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendants. No defense of failure to mitigate should be allowed.

66.     Plaintiff has been injured and damaged by Defendants' actions, and Plaintiff is entitled to recover judgment against Defendants for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendants' violations of 11 U.S.C. § 362 and pursuant to the Court's powers under 11 U.S.C. § 105.

## VIII. VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

67.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, including, but not limited to, SWRS's actions at issue taken against Plaintiff on the Account on behalf of Stonebridge, the principal, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendant(s) for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.

## IX. DAMAGES

68.     In addition to any damages previously stated hereinabove, the conduct of Defendants has proximately caused Plaintiff past and future monetary loss; past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state; and other damages, evidence for all of which will be presented to the jury. Moreover, dealing with the consequences of Defendants' actions has cost Plaintiff's time and mental energy, which are precious to him.

69.     At all relevant times, Defendants knew, and they continue to know, that, pursuant to the automatic stay, the debt on the Account was not legally collectible from Plaintiff while the automatic stay was in effect, but Defendants made a corporate decision to act knowingly, willfully, maliciously, and contrary to their knowledge of federal law and the effect of the automatic stay, to attempt to collect on the Account from Plaintiff, when they knew such collection attempts were forbidden as a result of Plaintiff's Bankruptcy Case and the automatic stay. Defendants had no right to engage in any of their actions at issue.

70.     Plaintiff believes that, after reasonable discovery in this case, he will be able to show that all actions taken by, or on behalf of, Defendants were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff, with the actual knowledge that such actions were in violation of the law.

71.     Plaintiff believes that, after reasonable discovery, he will be able to show that Defendants have been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendants, intentionally and knowingly, have refused to correct their policies and comply with applicable laws, of which laws they are well-aware.

72.     Plaintiff believes that, after reasonable discovery, he will be able to show that Defendants have engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts subject to the automatic stay imposed by 11 U.S.C. § 362. Accordingly, Defendants are subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendants. Moreover, Plaintiff's injuries resulted from Defendants' malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

73.     Plaintiff believes that, after reasonable discovery, he will be able to show that Defendants' actions at issue were part of Defendants' illegal design, implemented of their policies and procedures, to profit by harassing unsophisticated debtors and collecting debts included in consumer bankruptcy cases and subject to the automatic stay, imposed by 11 U.S.C. § 362.

74.     Due to Defendants' conduct, Plaintiff was forced to hire counsel, and his damages include reasonable attorney's fees incurred in prosecuting his claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Hunter L. Dunn, prays the Court:

A.      Enter judgment in favor of Plaintiff and against Defendants for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendants' violations of the TDCA, Plaintiff's privacy rights, and the automatic stay;

B       Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

      D.      Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

                                   Respectfully submitted,

                                   */s/ James J. Manchee*
                                   James J. Manchee
                                   State Bar Number 00796988
                                   jim@mancheelawfirm.com
                                   Marilyn S. Altamira
                                   State Bar Number 00796119
                                   maltamira@mancheelawfirm.com
                                   Manchee & Manchee, PC
                                   2745 North Dallas Parkway, Suite 420
                                   Plano, Texas 75093
                                   (972) 960-2240 (telephone)
                                   (972) 233-0713 (fax)

                                   COUNSEL FOR PLAINTIFF

## JURY DEMAND

     Plaintiff hereby demands a trial by jury on all issues so triable.

February 11, 2020                 */s/ James J. Manchee*
Date                                James J. Manchee